# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID GARRY DEAN,<br><br>      Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>      Defendant. | Case No.: Case No.: 1:18-cv-1564 - JLT<br><br>ORDER REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF DAVID GARRY DEAN AGAINST DEFENDANT, THE COMMISSIONER OF SOCIAL SECURITY |

David Garry Dean asserts he is entitled to benefits under the Social Security Act. Plaintiff argues the administrative law judge erred in evaluating the record and seeks judicial review of the decision denying benefits. For the following reasons, the matter is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## **PROCEDURAL HISTORY**

In 2015, Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI, asserting he was unable to work due a back injury. (Doc. 10-6 at 2-16; Doc. 10-7 at 7) The Social Security Administration denied the application at the initial level and upon reconsideration. (*See generally* Doc. 10-4) Plaintiff requested a hearing and testified before an ALJ on June 22, 2017. (*See* Doc. 10-3 at 16) The ALJ determined Plaintiff was not disabled under the Social Security Act and issued an order denying benefits on October 12, 2018. (Doc. 10-3 at 16-29) Plaintiff filed a request for review of the decision with the Appeals Council,

1

which denied the request on September 14, 2018. (Doc. 10-5 at 13; Doc. 10-3 at 2-5) Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

**STANDARD OF REVIEW**

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

**DISABILITY BENEFITS**

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The process requires the ALJ to determine whether Plaintiff (1) is engaged substantial gainful activity, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

Pursuant to this five-step process, the ALJ determined Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of March 14, 2014. (Doc. 10-3 at 18) Second, the ALJ found Plaintiff's severe impairments included: degenerative disc disease, status post laminectomy decompression fusion L5-S1; diabetes mellitus; and obesity. (*Id.*) At step three, the ALJ determined Plaintiff's impairments did not meet or medically equal a Listing. (*Id.* at 19-20) Next, the ALJ found:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, the claimant can lift and /or carry 20 pounds occasionally and 10 pounds frequently, and stand or walk at least six hours in an 8-hours workday. The claimant requires the use of a cane in his non-dominant hand to stand or walk for more than 10 minutes at a time, or to ambulate across uneven terrain. He can occasionally climb stairs or ramps, but never climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl and he cannot work at unprotected heights.

(*Id.* at 20) With this residual functional capacity, the ALJ found at step four that Plaintiff was unable to perform any past relevant work. (*Id.* at 27) However, at step five the ALJ found "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.*) Thus, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act from March 14, 2014, through the date of the decision. (*Id.* at 28)

## DISCUSSION AND ANALYSIS

Appealing the decision to deny his applications for benefits, Plaintiff argues that the ALJ erred in evaluating the opinion of a lay witness. In addition, Plaintiff contends the ALJ failed to properly

3

formulate the residual functional capacity, by interpreting the evidence on his own a physician reviewing the most recent evidence in the record. Finally, Plaintiff contends that even if the residual functional capacity is correct, the ALJ erred by relying on the testimony of the vocational expert due to a conflict between the testimony of the vocational expert and the *Dictionary of Occupational Titles*. (*See generally* Doc. 13 at 10-17)

**A.     Lay Witness Statement**

Wanda Halsey, a friend of Plaintiff, completed a "Function Report – Adult – Third Party" on July 15, 2015. (Doc. 10-7 at 47) The ALJ must consider such statements from "nonmedical sources" in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1513(a)(4), 416.927(c)(4); *Merrill v. Apfel,* 224 F.3d 1083, 1085 (9th Cir. 2000) ("an ALJ, in determining a claimant's disability, must give full consideration to the testimony of friends and family members"). To discount the testimony of a lay witness, the ALJ must give specific, germane reasons for rejecting the opinion of each witness. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009). For example, an ALJ can reject lay witness testimony to the extent that it conflicts with other testimony, the record of the claimant's activity, and the medical evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005); *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

The ALJ addressed the lay witness statement from Ms. Halsey and gave it "limited weight," stating:

> [S]he reported the claimant was unable to participate in family and friend events, and was only able to visit for short periods of time due to pain. They used to spend up to 16 hours together, but now maybe only two hours if he can handle it. She reported the claimant was unable to sit, stand or lie for long periods and is unable to lift objects weighing more than 10 pounds. She reported the claimant was unable to walk more than 100 yards before he has to stop or have assistance (Exhibit 8E, p. 1). She reported the claimant's condition affected lifting, walking, stair climbing, squatting, sitting, bending, standing, reaching, kneeling, completing tasks, concentration, following instructions, using his hands, and getting along with others (Exhibit 8E, p. 6). She noted the claimant had anger and stress issues due to limited independence, and anxiety over not being able to handle his disability (Exhibit 8E, pp. 6-7). I have considered this third party function report as evidence from a non- medical source and have accorded it only limited weight because of the inconsistent and unsupported statements contained therein.

(Doc. 10-3 at 26) Plaintiff contends this analysis by the ALJ is insufficient, and "is little better than a dismissal without comment" because the ALJ "identified no internal inconsistencies in the opinion, failed to identify any inconsistencies with the record, and failed to identify any unsupported statements

4

within the witness statement." (Doc. 13 at 14)

Significantly, the Ninth Circuit determined an ALJ may not reject the statements of lay witness only upon the grounds that the "medical records did not corroborate" the symptoms alleged. *Smolen,* 80 F.3d at 1289. The Court concluded rejecting lay witness statements for this reason "violates SSR 88-13, 1899 SSR LEXIS 14 which directs the ALJ to consider the testimony of lay witnesses where the claimant's alleged symptoms are *unsupported* by her medical records." *Id.* (emphasis in original). Consequently, courts have criticized the rejection of lay witness testimony on the grounds that the statements are inconsistent with the medical record, particularly where the ALJ fails to specifically identify the inconsistencies. *See, e.g.*, *Noa v. Berryhill*, 2018 WL 1696819 at *7-8 (N.D. Cal. Apr. 6, 2018) (finding error where the ALJ failed to identify what portions of the lay witness testimony was inconsistent with the medical record); *Eddy v. Colvin*, 2016 WL 11383833 at *6 (D. Or. Sept. 1, 2016) ("the Ninth Circuit has held that it is error for an ALJ to reject lay witness testimony simply because it is not corroborated by the medical record").

For example, in *Noa*, the ALJ indicated she gave "some weight" to the lay witness' "description of the claimant's activities and limitations to the extent they are consistent with the medical record and the claimant's own report of her abilities." *Id.*, 2018 WL 1696819 at *7. The Northern District determined this statement by the ALJ was insufficient, because the ALJ failed to identify the portions of the lay witness testimony that were inconsistent with the medical record, stating:

> [I]t is not clear from the ALJ's decision what descriptions she credited, and what descriptions she rejected. The medical record is more than a thousand pages long, and the ALJ does not specify what portions of [the] declaration are not consistent with the medical record. To the extent the ALJ rejected any portion of her declaration on that basis, the ALJ did not sufficiently articulate her reasons to allow this Court to conduct a meaningful review of her analysis. This was error.

*Id.*, 2018 WL 1696819 at *7. The court remanded the action, in part, with instructions for ALJ to reevaluate the weight she gave to the lay witness testimony "and provide the necessary reasoning for doing so." *Id.* at *11.

As in *Noa*, the ALJ summarized the statements from the lay witness, yet did not identify the portion of the statement from Ms. Halsey that were "inconsistent and unsupported." The Court is unable to speculate as to the inconsistencies the ALJ found, or the statements—or portions thereof—

5

that the ALJ rejected. *See Noa*, 2018 WL 1696819 at *7-8; *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (the court cannot "speculate as to the grounds for the ALJ's conclusions"); *Eddy*, 2016 WL 11383833 at *7 ("while inconsistency with the medical record may be germane to lay witness testimony, simply stating the testimony is inconsistent, without more, does not provide sufficient information for a reviewing court to assess the adequacy of the ALJ's finding"). Thus, the ALJ erred in evaluating the lay witness statement from Ms. Halsey.

## B.  Residual Functional Capacity

A claimant's residual functional capacity is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). In formulating an RFC, the ALJ weighs medical and other source opinions, as well as the claimant's credibility. *See, e.g., Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009). Further, the ALJ must consider "all of [a claimant's] medically determinable impairments," whether severe or not, when assessing a RFC. 20 C.F.R. §§ 405.1545(a)(2), 416.945(a)(2).

In determining Plaintiff's RFC, the ALJ explained he gave "substantial weight to the opinions of Dr. Kiger, and Dr. Bullard," who reviewed the record related to Plaintiff's application at the initial level and upon reconsideration. (Doc. 10-3 at 26) The ALJ observed:

> [O]n April 17, 2015, state agency consultant C. Bullard, M.D. noted there was no need for any further surgical correction for neuropathic pain on the left lower extremity, and noted the claimant takes marijuana for pain and no other prescription medications. He noted the claimant is still quite active. Dr. Bullard opined the claimant could lift and carry 20 pounds occasionally and 10 pounds frequently, and stand and or walk for six hours in an eight- hour workday (Exhibit 1A, pp. 6-7). On August 5, 2015, upon reconsideration, L. Kiger, M.D. reviewed the claimant's medical evidence and endorsed Dr. Bullard's opinion that the claimant could perform a light residual functional capacity. Dr. Kiger further opined, based on the claimant's history of fusion with decreased range of motion, that the claimant could occasionally climb ramps, stairs, ladders, ropes and scaffolds, and occasionally balance, stoop, kneel, crouch, and crawl.

(*Id.*) The ALJ observed that after Drs. Bullard and Kiger reviewed the record, Plaintiff "obtained a prescription for a regular cane for use 'as directed' on May 15, 2017." (*Id.*) Thus, the ALJ "included the use of a cane in the … residual functional capacity." (*Id.*)

Plaintiff asserts that the ALJ erred in formulating the RFC in this manner because the opinions

of the non-examining physicians pre-dated additional evidence in the record, including the prescription for a cane, and other objective evidence. (Doc. 13 at 10-13) According to Plaintiff, "the opinion[s] of the non-examining physicians failed to consider all of the evidence and account for the full extent of Plaintiff's limitations, including his pain." (*Id.* at 10) For example, Plaintiff observes that after Drs. Bullard and Kiger reviewed the record, "[an] MRI of the spine again revealed spinal stenosis with central canal narrowing and edema at the nerve roots, and treatment records revealed sensory loss and weakness of the left leg and foot, nerve testing which confirmed chronic radiculopathy of the left leg, increasing falls due to left leg weakness, and a prescription for a cane." (*Id.* at 11, citing AR. 449-53, 465, 473, 484, 486, 535, 552 [Doc. 10-10 at 11-15, 27, 35; Doc. 10-11 at 4, 6; and Doc. 10-12 at 2, 19]

   The Commissioner argues the ALJ did not err in evaluating this evidence, because "[a]t no point do the regulations state that a medical consultant must review the entire record in order for an ALJ to rely on the doctor's opinion." (Doc. 14 at 11) The Commissioner observes, "Ninth Circuit precedent also permits an ALJ to rely on the opinion of State medical consultants who review the record available at the time, which is often not the entire record that goes before the ALJ." (*Id.*, citing, *e.g.*, *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (ALJ gave more weight to the non-examining opinion); *Bray v. Astrue*, 554 F.3d 1219, 1221, 1227 (9th Cir. 2009) (ALJ properly relied "in large part on the DDS physician's assessment" in assessing the claimant's RFC and rejecting treating doctor's testimony regarding the claimant's functional limitations); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record"); *Garcia v. Berryhill*, 765 F. App'x 176 (9th Cir. 2019) (unpublished) (ALJ "reasonably determined that the opinions of the examining and non-examining physicians regarding Garcia's capacity were consistent with the medical record as a whole and were entitled to significant weight")).

   Further, the Commissioner argues that there was not "post-opinion development" in this action that would require the ALJ to further develop the record with additional physician opinions. (*Id.* at 12-13) The Commissioner observes: "Dr. Kiger reviewed the 2014 MRI, the records regarding Plaintiff's back surgery, Dr. Feng's examination finding reduced lumbar range of motion, positive straight leg raising tests showing evidence of impingement, the January 2015 lumbar CT scan showing mild to

moderate stenosis, and complaints of leg numbness." (*Id.* at 13, citing AR 127-28 [Doc. 10-4 at 38-39) According to the Commissioner, "Although the record contains a subsequent MRI, there "was no significant interval change when compared to the prior study," degenerative changes at L5-S1 were seen 'again' and had 'not significantly progressed,' and there was evidence of edema that was 'stable' and of 'uncertain clinical significance' (*Id.*, citing AR 552 [Doc. 10-12 at 19]). Thus, the Commissioner maintains the opinions of the non-examining physicians were consistent with the later evidence. Finally, the Commissioner asserts that while "Plaintiff was prescribed a cane, the ALJ accounted for use of a cane in the RFC finding." (*Id.*)

Significantly, as Plaintiff argues, several evaluations and studies were performed that were not included in the record reviewed by Drs. Kiger and Bullard. For example, the ALJ noted Plaintiff was evaluated on March 6, 2015 by Dr. Paul Ky, who found Plaintiff had a "moderately positive" straight leg raise, "moderately positive" loading maneuvers of the lumbar spine, and "diminished sensation along the left L4 and L5 nerve root distribution." (Doc. 10-3 at 24) There is no indication that these findings were reviewed by either Dr. Kiger or Bullard. (*See* Doc. 10-4 at 3-4, 23-36 (identifying the evidence received in the file at the initial level and reconsideration). In addition, the ALJ noted that, after the record was reviewed, Plaintiff had a neurosurgical consultation in April 2016, which "revealed a left L5-S1 sensory loss [and] weakness of dorsiplantar flexion of the left foot." (Doc. 10-3 at 25) The ALJ also acknowledged that Plaintiff had a nerve condition study in May 2016 that revealed "mild and chronic left L5 and bilateral S1 radiculopathy" and "[m]ild sensory polyneuropathy." (*Id.*) Finally, in May 2017, Plaintiff's "range of motion was very limited, and there was left sciatic notch tenderness," as well as a positive straight leg raise test. (*Id.*) Evidently, the ALJ reviewed these findings and concluded Plaintiff could perform work at the light exertion level, with additional restrictions.

Because no physician reviewed the clinical findings from the examinations dated March 2015 and later, the ALJ clearly rendered his own medical findings that Plaintiff could perform light work with the additional limitations, such as standing "the use of a cane in his non-dominant hand to stand or walk for more than 10 minutes at a time, or to ambulate across uneven terrain." (*See* Doc. 10-3 at 20) However, it is well-settled law that an ALJ may not render his own medical opinion and is not empowered to independently assess clinical findings. *See, e.g., Tackett v. Apfel*, 180 F.3d 1094, 1102-

03 (9th Cir. 1999) (holding an ALJ erred in rejecting physicians' opinions and rendering his own medical opinion); *Banks v. Barnhart*, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("An ALJ cannot arbitrarily substitute his own judgment for competent medical opinion, and he must not succumb to the temptation to play doctor and make his own independent medical findings"); *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (as a lay person, the ALJ is "simply not qualified to interpret raw medical data in functional terms"). "When an ALJ rejects all medical opinions in favor of his own, a finding that the RFC is supported by substantial evidence is less likely." *See Stairs v. Astrue*, 2011 WL 318330, at *12 (E.D. Cal. Feb.1, 2011). For example, this Court determined an ALJ erred where the RFC identified was more restrictive than those of physicians in the record, because the ALJ alone reviewed the record. *See Perez v. Comm'r of Soc. Sec.*, 2018 WL 721399 (E.D. Cal. Feb. 6, 2018).

In *Perez*, a physician concluded after a consultative examination that the claimant "had no functional restrictions", and two non-examining physicians opined the claimant "had no severe physical impairments. *Id.*, 2018 WL 721399 at *6. The ALJ "gave no weight" to these opinions, finding the record indicated the claimant had some limitations. *Id.* Despite these opinions, "the ALJ concluded that Plaintiff would be capable of a reduced range of light work with postural manipulative and environmental restrictions." *Id.* The Court found the ALJ erred, explaining:

> A claimant's residual functional capacity is not a medical opinion, but is an issue to be decided by the ALJ. 20 C.F.R. §§ 404.1527(d)(2), 416.920(d)(2). However, the finding must be supported by substantial evidence in the record and the ALJ must explain his reasoning behind the RFC. 42 U.S.C. § 405(b); 20 C.F.R. §§ 404.1520c, 416.920c.
>
> Here, the ALJ stated that the RFC was supported by the weight of the objective evidence and Plaintiff's less than credible testimony. But the Court is unable to determine how the ALJ arrived at the conclusion that Plaintiff was capable of light work. Absent adequate explanation of the record, without specific support from a medical source, and with no testimony from a medical expert, the ALJ appears to have defined his own limitations for Plaintiff. The Court finds that this was error. *See Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (the ALJ was not qualified as a medical expert and therefore could not permissibly go outside the record to consult medical textbooks for purpose of making his own assessment of the claimant's physical condition); *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person,... the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the determination."); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").

*Id.*, 2018 WL 721399 at *7-8. Without the support of a physician's opinion, the Court concluded the RFC lacked the support of substantial evidence. *Id.* at *8.

As in *Perez*, there simply is no evidence to support the findings of the ALJ, who was the only individual to review significant objective findings, such as positive straight leg raise tests, moderately positive loading maneuvers of the lumbar spine, diminished sensation, weakness, nerve conduction study results, and the MRI of May 2017. Further, the ALJ was the only one to consider Plaintiff's prescription for a cane. The Court is unable to determine the effect of the content of these records on Plaintiff's ability to work, or why the ALJ believed Plaintiff required "the use of a cane in his non-dominant hand to stand or walk for more than 10 minutes at a time, or to ambulate across uneven terrain." Without physicians' opinions to support the ALJ's conclusion or evaluate Plaintiff's need for a cane, the Court is unable to find substantial evidence supports the RFC determination. *See Perez,* 2018 WL 721399 at *7-8; *Perez v. Sec'y of Health & Human Servs.*, 958 F.2d 445, 446 (1st Cir. 1991) (holding "the ALJ's conclusions are not supported by substantial evidence" if an RFC is formulated without the findings of a physician).

## C. Reliance upon the Vocational Expert Testimony

Plaintiff contends that the ALJ also erred in relying upon the testimony of a vocational expert to determine Plaintiff was able to perform work at step five due to "an apparent conflict between the DOT and Vocational Expert's testimony that Plaintiff could perform light jobs that require frequent handling and reaching, despite requiring the use of a cane." (Doc. 13 at 15)

At step five, the burden shifts to the Commissioner to show that Plaintiff can perform other substantial gainful activity and a "significant number of jobs exist in the national economy" which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984); *see also Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001) (discussing the burden shift at step five). To make this determination, the ALJ may rely upon job descriptions in the *Dictionary of Occupational Titles* ("DOT"), or the ALJ may call a vocational expert "to testify as to (1) what jobs the claimant, given his or her functional capacity, would be able to do; and (2) the availability of such jobs in the national economy." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999).

The ALJ asked the vocational expert to consider "an individual who can lift or carry 20 pounds occasionally ten pounds frequently stand or walk for at least six hours in an eight hour day requires the use of a cane in his non dominant hand to stand or walk for more than ten minutes at a time or to

ambulate across uneven terrain." (Doc. 10-3 at 86) In addition, the ALJ indicated the hypothetical individual could "occasionally climb stairs or ramps never climb ladders ropes or scaffolds can occasionally balance stoop kneel crouch and crawl cannot work at unprotected heights." (*Id.*) The VE opined an individual with these limitations could perform "unskilled work" in the national economy, such as ticket taker, DOT 344.677-010; photocopy machine operator, DOT 207.685-014; and order caller, DOT 209.667-014. (*Id.* at 87)

Importantly, when eliciting testimony from a vocational expert, an ALJ's hypothetical question must "'set out all of the claimant's impairments' for the vocational expert's consideration." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999), quoting Gamer v. Sec'y of Health and Human Servs., 815 F.2d 1275, 1279 (9th Cir. 1987). "If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that the claimant has a residual working capacity has no evidentiary value." *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). Because the ALJ's hypothetical question mirrored the flawed residual functional capacity, the testimony of the vocational expert is not substantial evidence to support the ALJ's findings.[1]

**D.      Remand is Appropriate**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

---

[1] Notably, courts have disagreed regarding whether use of a cane causes an apparent conflict with jobs under the *Dictionary of Occupational Titles* that require frequent reaching and handling, as the jobs identified here by the vocational expert. *Compare Peck v. Berryhill*, 2019 WL 1594889, at *10 (E.D. Cal. Apr. 15, 2019) (no conflict between the use of a cane and the DOT descriptions of cashier, parking attendant, and office helper); *with Espinoza v. Berryhill*, 2017 U.S. Dist. LEXIS 90048 at *10 (C.D. Cal. June 8, 2017) ("an apparent or obvious conflict exists because lifting, carrying, or manipulative activities while standing or walking are essential, integral, or expected parts" for the jobs of office helper and assembler). Thus, if the ALJ determines Plaintiff requires use of a cane upon remand, the ALJ should inquire of the vocational expert the extent to which any jobs identified require the use of bilateral hands.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

The ALJ erred in evaluating the statements of lay witnesses in this action and explaining the extent to which the statements were accepted and rejected. Further, the RFC articulated by the ALJ lacks the support of substantial evidence in the record, and the matter should be remanded for further consideration. *See Tackett*, 180 F.3d at 1102-03 (remanding the matter to the Social Security Administration for reconsideration after finding the ALJ erred by offering his own medical conclusion, which was not supported by any medical evidence); *Perez*, 958 F.2d at 446 (finding that where the ALJ offered an opinion the support of an "assessment of residual functional capacity by a physician, …it is necessary to remand for the taking of further functional evidence").

## **CONCLUSION AND ORDER**

For the reasons set forth above, the Court finds the ALJ erred in his evaluation of the record and failed to apply the correct legal standards. Consequently, the ALJ's decision cannot be upheld by the Court. *See Sanchez*, 812 F.2d at 510. Accordingly, the Court **ORDERS**:

1. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
2. The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff David Garry Dean and against Defendant, the Commissioner of Social Security.

IT IS SO ORDERED.

Dated: __March 10, 2020__         __/s/ Jennifer L. Thurston__
UNITED STATES MAGISTRATE JUDGE